CENTENNIAL STATE CARPENTERS
PENSION TRUST FUND, et
al., Plaintiffs,

v.

WOODWORKERS OF DENVER,
INC., Defendant.

Civ. A. No. 84–K–762.

United States District Court,
D. Colorado.

Aug. 13, 1985.

Pamela Martin, Lakewood, Colo., for plaintiffs.

Robert R. Miller and Kate Raabe, Stettner, Miller & Cohn, P.C., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is an action to recover withdrawal liability under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments of 1980 (MPPAA), 29 U.S.C. § 1381 *et seq.*. Plaintiff Centennial State Carpenters Pension Trust Fund is a multiemployer plan as defined in 29 U.S.C. § 1002(37)(A), that primarily covers employees in the building and construction industry. The plan's trustees are also plaintiffs. Defendant Woodworkers of Denver, Inc. employed certain workers formerly covered by the plan. Jurisdiction is based upon 28 U.S.C. § 1331 and 29 U.S.C. § 1451(c).

Woodworkers moves for summary judgment challenging the constitutionality of the MPPAA on several grounds. Plaintiffs cross-move for summary judgment denying that the Act is unconstitutional and arguing that they are entitled to recover as a matter of law the entire amount of withdrawal liability because defendant failed to demand arbitration under 29 U.S.C. § 1401(a)(1). Both sides have briefed the issues and I am now prepared to rule.

I

The MPPAA was enacted in 1980 to strengthen financially multiemployer pension plans by discouraging employers from withdrawing and leaving a plan with unfunded liabilities. H.R.Rep. No. 859, 96th Cong., 2d Sess. 67, *reprinted* in 1980 U.S. Code Cong. & Ad.News 2918, 2935. It attempts to accomplish this by requiring

withdrawing employers to pay to the multiemployer fund "withdrawal liability" or a proportionate share of the fund's "unfunded vested benefit liability." 29 U.S.C. § 1381. The "vested benefit liability" is the actuarial present cash value of all of the benefits that vested. Where the pension fund has insufficient assets to cover its vested benefit liability, "the difference between the assets and the liability is the 'unfunded vested benefit liability'." *Board of Trustees v. Thompson Building Materials, Inc.*, 749 F.2d 1396, 1399 (9th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2116, 85 L.Ed.2d 481.

The calculation of the amount of the withdrawal liability is done by the trustees of the pension plan. 29 U.S.C. § 1382. Any dispute between the employer and the trustees regarding either the amount or the fact of liability must be resolved by arbitration. 29 U.S.C. § 1401(a)(1). But a demand for arbitration must be filed within 60 to 180 days depending upon whether it is initiated jointly or separately. 29 U.S.C. § 1401(a)(1). "In the arbitration proceedings, the trustees' calculations are presumed correct, unless the employer shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous." *Id.*; 29 U.S.C. § 1401(a)(3)(A). Either party may appeal the arbitrator's award to district court. 29 U.S.C. § 1401(b)(2).

The facts in this case are essentially undisputed. Prior to April 1982, defendant Woodworkers entered into a collective bargaining agreement with a local branch or affiliated district council of the United Brotherhood of Carpenters and Joiners of America. Under its terms, defendant promised to make contributions to the plan for each hour of specified work performed by Woodworkers' employees. That obligation only ran the life of the contract.

On April 15, 1982, the collective bargaining agreement between Woodworkers and the union expired. Despite negotiation efforts, the parties failed to agree upon a new contract and in the fall of 1982 a successful decertification election established that the union no longer represented a majority of defendant's employees. As a result, Woodworkers' obligation to contribute to the plan ceased. However, defendant continued to perform the same type of work in the state of Colorado.

By letter dated May 2, 1983, plaintiff trustees notified Woodworkers that its withdrawal liability under the MPPAA totaled $39,211 and demanded payment pursuant to an installment schedule. Defendant neither paid plaintiffs any portion of the withdrawal liability nor demanded arbitration under 29 U.S.C. § 1401(a)(1). So on April 4, 1984, plaintiffs filed the instant action. By way of defense, Woodworkers disagrees with the amount of its withdrawal liability and attacks the constitutionality of the Act.

## II

A. Defendant's constitutional challenge of the MPPAA can hardly be characterized as novel. At least six circuits have already addressed the identical issues and upheld the constitutionality of the Act. *See Keith Fulton & Sons, Inc. v. New England Teamsters and Trucking Industry Pension Fund,* 762 F.2d 1137 (1st Cir.1985); *Washington Star Co. v. International Typographical Union Negotiated Pension Plan,* 729 F.2d 1502 (D.C.Cir.1984); *Textile Workers Pension Fund v. Standard Dye & Finishing Co., Inc.,* 725 F.2d 843 (2nd Cir.1984) *cert. denied,* — U.S. —, 104 S.Ct. 3554, 82 L.Ed.2d 856; *Terson Co., Inc. v. Bakery Drivers & Salesmen Local 194,* 739 F.2d 118 (3rd Cir.1984); *Republic Industries, Inc. v. Teamsters Joint Council No. 83 of Virginia Pension Fund,* 718 F.2d 628 (4th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984); *Peick v. Pension Benefit Guaranty Corp.,* 724 F.2d 1247 (7th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 3554, 82 L.Ed.2d 855 (1984). Indeed the only case cited by defendant in support of its position, *Keith Fulton & Sons, Inc. v. New England Teamsters and Trucking Industry Pension Fund,* 762 F.2d 1124 (1st Cir. 1984) was reheard en banc by the First

**1066**

Circuit Court of Appeals and reversed on May 23, 1985, 762 F.2d 1137. Closer to home, two judges in this district have upheld the constitutionality of the MPPAA. *See Central Corp. v. Trustees of the Centennial State Carpenters Pension Trust Fund,* No. 83–JM–2510, slip op. (D.Colo. April 16, 1985) (Judge John P. Moore); *Bassett Construction Company v. Trustees of the Centennial State Carpenters Pension Trust Fund,* No. 83–F–980, slip op. (D.Colo. February 22, 1985) (Chief Judge Sherman G. Finesilver).

In spite of this precedent, Woodworkers argues that the MPPAA violates the fifth amendment by a) impairing its contract rights; b) taking property without compensation; and c) omitting important due process safeguards in the determination and collection of withdrawal liability, as well as its seventh amendment right to a jury trial. I am not persuaded by any of its arguments and join the unanimous conclusion of the other circuits that the MPPAA is constitutional.

■ Turning first to the impairment of contract rights issue, I note that the United States Supreme Court in *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* ── U.S. ──, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984) recently concluded that the rationality standard and not contracts clause analysis applies to the review of federal economic legislation. Under that standard, economic legislation is presumed to be constitutional until the movant can establish that the legislature acted in an arbitrary and irrational way. *Thompson Building, supra* at 1401. I consider the withdrawal provisions of the MPPAA to be a rational method of "ensuring that each member of a multiemployer plan shoulders its portion of the collective burden imposed to safeguard the employees' right to full compensation." *Terson, supra* at 121; *accord Washington Star, supra* at 1510; *Peick, supra* at 1266; *Thompson Building, supra.* As the Ninth Circuit explained, "[b]y forcing the economic burden upon the employer at the time of withdrawal, the Act insures that the employer will give appropriate consideration to the fund's soundness as part of the withdrawal decision." *Thompson Building,* 749 F.2d at 1402. I hold that the withdrawal liability provisions of the MPPAA do not contravene the due process requirements of the constitution because they rationally further a legitimate congressional concern.

■ I also conclude that the MPPAA does not violate the takings clause of the fifth amendment. First, the law is clear that the contractual right in question here is simply not the type of distinct and identifiable "property" protected by the takings clause. *Peick, supra* at 1276. Defendant's only interest is a "purely contract-based 'right' to avoid liability for further contributions to the pension plans in which [it] participates"; and this is in "no way analogous to the type of interests in specific property protected under the takings clause." *Id.; see United States v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982); *Thompson Building, supra* at 1406. Even assuming, arguendo, that this contract right constitutes "property" under the fifth amendment, Woodwork's argument still fails. The Supreme Court made clear in *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978) that adjustments in economic benefits and burdens to promote the common good do not constitute a taking under the fifth amendment. *See Terson, supra* at 121; *Republic Industries v. Teamsters,* 718 F.2d at 642–43.

Woodworkers' final due process argument is that the absence of adequate procedural safeguards in the withdrawal liability provisions of the MPPAA violates defendant's fifth amendment rights. Within this broad category, Woodworkers makes sweeping charges that the procedures to determine and collect withdrawal liability are improper, that the presumption of correctness of the calculation is unfair, and that the trustees are inherently biased. I find little merit in these contentions.

■ I hold that the MPPAA did not deprive defendant of its property without a

pre-seizure hearing "by requiring payment of disputed amounts during the pendency of a review or appeal challenging the accuracy of the fund's calculations." *Thompson Building, supra* at 1404; *see* 29 U.S.C. § 1399(c)(2); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). There is absolutely no evidence before me that defendant has been deprived of any property. Woodworkers refused to pay plaintiffs any withdrawal liability. Moreover, defendant also failed to exercise its statutory rights to call into question the accuracy of the calculations, to request reconsideration by the trustees, to initiate arbitration or to seek review by the courts. I therefore conclude that Woodworkers was afforded all of the process that it was due. *Thompson Buildings, supra.*

I find defendant's charge of institutional bias equally unpersuasive. In *Keith Fulton, supra,* the First Circuit reconsidered en banc the issue of institutional bias as well as the constitutionality of the prescribed methods of assessing liability with the statutory presumption. The court concluded that any trustee bias that might exist was not of a constitutional dimension. *Id.* at 1143. Since an equal number of trustees are chosen by the participating employers and the participating unions, their allegiances are balanced. Furthermore, the trustees are fiduciaries required by law "to act neutrally and reasonably in making withdrawal liability determinations." *Washingtons Star, supra* at 1511. Any determination they make may always be challenged by the parties. *Keith Fulton, supra* at 1143.

The First Circuit also ruled that the rebuttable presumption that the trustees calculated the withdrawal liability correctly is not constitutionally deficient. "Read together ... these provisions do little more than allocate the burden of proof to the challenger and direct that issues which are close be resolved in favor of the nonjudicial dispute resolver." *Keith Fulton, supra* at 1146, *quoting Republic Industries v. Teamsters, supra* at 640–641.

Before turning to Woodwork's seventh amendment argument, I note that defendant's motion for summary judgment casually mentions the equal protection clause, but its brief neither refers to such an argument nor develops it any way. I do not believe that there is any evidence to support a finding that multiemployers are penalized more than single employers. *See Bassett, supra.* Accordingly, I reject any equal protection argument that defendant intended to make but failed to articulate.

 Finally, defendant maintains that the withdrawal liability provisions requiring arbitration violate its right to a jury trial under the seventh amendment. This is perhaps the most specious challenge of all. The seventh amendment only grants a right to trial by jury in "suits at common law." *See Atlas Roofing Co. v. OSHA,* 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977). Thus, "[w]hen Congress creates a new cause of action and remedies unknown to the common law, it may vest factfinding in a tribunal other than a jury, free from the strictures of the Seventh Amendment." *Textile Workers, supra* at 855. *See also Republic Industries v. Teamsters, supra* at 642. Woodworkers has no right to a jury under the MPPAA and therefore cannot be heard to complain that the Act impinges upon its seventh amendment rights.

B. This brings me to plaintiffs' cross-motion for summary judgment. Plaintiffs contend that they are entitled to judgment as a matter of law because defendant failed to initiate arbitration as required by the MPPAA. If I refuse to hear defendant's calculation challenge and find that the time for arbitration has passed, then according to plaintiffs they should be awarded the full amount of the withdrawal liability plus interest, costs and attorneys' fees. Defendant admits that it did not initiate arbitration but insists that it had no obligation to do so before the resolution of the constitutional questions.

 I begin with the well-established principle that the arbitration requirement under the MPPAA, 29 U.S.C. § 1401(a)(1) must be analyzed as a question of exhaus-

tion of remedies and not as an issue of an absolute jurisdictional bar vel non. *I.A.M. Pension Fund Benefit Plan v. Stockton Tri Industries*, 727 F.2d 1204, 1207 (D.C. Cir.1984); *Republic Industries v. Teamsters, supra* at 634–635; *Shelter Framing Corp. v. Pension Benefit Guaranty Corp.*, 705 F.2d 1502, 1503 (9th Cir.1983); *Republic Industries v. Central Pennsylvania Teamsters*, 693 F.2d 290 (3rd Cir.1982). Hence I must "balance the agency's interests in applying its expertise, making a proper record, and maintaining an efficient, independent administrative system with the interests of private parties in finding adequate remedies." *Shelter Framing, supra* at 1509; *see Montgomery v. Rumsfield*, 572 F.2d 250, 253 (9th Cir.1978). In applying this analytical approach, however, the constitutional question and the amount of withdrawal liability question must be treated separately.

■ Notwithstanding the importance of the exhaustion doctrine and its underlying policy of judicial economy, *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938), I find that there is no arbitration requirement under the MPPAA for the constitutional issues. *Shelter Framing, supra* at 1509; *Republic Industries v. Central Penn., supra; T.I.M. E.–DC, Inc., v. Trucking Employers of No. Jersey Welfare Fund, Inc.*, 560 F.Supp. 294 (E.D.N.Y.1983). Section .1401(a)(1) only applies where the establishment or amount of withdrawal liability is at issue. Furthermore, arbitration of the constitutional questions would be of no value to the parties or the court. It would neither develop a better record for adjudicating the constitutional questions nor eliminate the need to consider those challenges. Thus, Woodworkers' position is correct insofar as it had no obligation to initiate arbitration proceedings on the constitutional claims before coming to the district court.

■ I reach a different conclusion, however, with respect to its challenge to the trustees' calculation of withdrawal liability. Under the statutory scheme of the MPPAA

all such disputes must first be resolved by arbitration; and the parties must initiate arbitration within the limitation period set forth in 29 U.S.C. § 1401. Here defendant was notified of its withdrawal liability in May 1983. Yet it neither responded to plaintiffs' demand for payment nor filed a demand for arbitration under the Act. Indeed, almost one year passed before plaintiffs, not defendant, filed this action; and it is only by way of an affirmative defense that defendant even questions the computation of its withdrawal liability.

In *Republic Industries v. Teamsters, supra,* the Fourth Circuit held that the filing of the district court action tolled the period of limitations under section 1401. There, the employer challenged both the constitutionality of the MPPAA as well as the determination of the trustees that it was a facility under the Act. Plaintiff employer filed its district action before the statute of limitations on the arbitration demand had run. The court found it to "be equitable that when Republic has made a not frivolous challenge to the constitutionality of the arbitration procedures, the validity of which has not heretofore been definitively decided, the pendency of the litigation should toll the running of the period prescribed in § 1401(a)(1)(B)." *Id.* at 644. Consequently, it ruled that defendant had sixty days left within which to demand arbitration.

Unlike *Republic Industries v. Teamsters, supra,* I find that Woodworkers failed to initiate arbitration on the issue of calculation within the time periods prescribed by Section 1401(a)(1). I further find that defendant did not file a district court action within the limitation periods in Section 1401 and thereby failed to toll the statute of limitations. To be sure, the entire period ran many months before plaintiffs' filed this action. Moreover, defendant raises the computation question only as a defense to plaintiffs' claim for relief. Based upon these facts it appears that Woodworkers is trying to circumvent the Act's clear and unambiguous requirement that all disputes involving the amount of

liability first be submitted to arbitration. To permit it to raise now as an after-thought the calculation issue would contravene not only the express language of the Act, but also the intent of the legislature. It would also encourage other parties to raise frivolous constitutional challenges of the MPPAA as a method of bootstrapping their dilatory calculation claims. I refuse to recognize such a practice. I therefore hold that it is improper to consider defendant's calculation challenge under the circumstances of this case. Accordingly, I grant plaintiff's motion for summary judgment.

Plaintiffs also seek interest, costs and attorneys' fees. I find that because Woodworkers is in default under 29 U.S.C. § 1399(c)(5), plaintiffs are entitled to the entire outstanding amount of withdrawal liability or $39,211, plus interest from the due date of the first payment which was not timely made, and costs incurred in connection with this action. The parties shall pay their own attorneys' fees.

IT IS THEREFORE ORDERED THAT:

1. Defendant's motion for summary judgment is denied.

2. Plaintiffs' cross-motion of summary judgment is granted.

3. Judgment be entered in favor of plaintiff and against defendant for $39,211, plus interest from the due date of the first payment which was not timely made, and costs.

4. The parties shall pay their own attorneys' fees.