**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, a pension trust, and Loran W. Robbins, Marion M. Winstead, Robert C. Sansone, Robert J. Baker, Howard McDougall, Arthur H. Bunte, Jr., R. Jerry Cook and R.V. Pulliam, Sr., the present Trustees, Plaintiffs,**

**v.**

**MGS TRANSPORTATION, INC., and Myers & Florence Trucking, Inc., both Indiana corporations, Defendants.**

**No. 86 C 4843.**

United States District Court, N.D. Illinois, E.D.

June 1, 1987.

Bruce Perlin, Terence G. Craig, Francis J. Carey, Central States Law Dept., Chicago, Ill., for plaintiffs.

R. Clay Bennett, Jeffrey L. London, Matkov, Griffin, Parson, Salzman & Madoff, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

Plaintiffs, the Central States, Southeast and Southwest Areas Pension Fund and its trustees, move for summary judgment in this collection action against defendants, MGS Transportation, Inc. and Myers & Florence Trucking, Inc. Plaintiffs allege that defendants withdrew from the pension fund and must pay more than $300,000 in unfunded vested benefits. Defendant Myers & Florence Trucking, Inc. argues that it is not an employer within the meaning of the relevant statute and thus not liable to the fund. Should we disagree, Myers & Florence joins MGS in contending that plaintiffs did not notify them properly and that defendants' insolvency should reduce any liability.

This lawsuit is brought under the Multiemployer Pension Plan Amendments Act [MPPAA] of 1980, 29 U.S.C. §§ 1381 et seq. (1982), which amended the Employee Re-

tirement Income Security Act of 1974 [ERISA], 29 U.S.C. §§ 1001 *et seq.* (1982), to establish the following procedures for determining an individual employer's responsibilities to a multiemployer pension plan:

An employer withdraws from the pension plan when it permanently ceases to have an obligation to contribute under the plan or permanently ceases all operations covered under the plan. 29 U.S.C. § 1383(a) (1982). Upon withdrawal, the employer must pay its share of the plan's unfunded vested benefit liability. *Id.* § 1381. The plan sponsor computes this withdrawal liability. *Id.* § 1382. "As soon as practicable after an employer's ... withdrawal," the plan sponsor must send the employer notice of the amount of the liability and demand payment according to a schedule set by the plan sponsor. *Id.* § 1399(b)(1). *See also id.* § 1382. If the employer objects to the amount or existence of liability, it must within ninety days ask the plan sponsor for a review. *Id.* § 1399(b)(2)(A). The plan sponsor informs the employer of the result and reasons for its decision on review. *Id.* § 1399(b)(2)(B).

Disputes over withdrawal liability determinations that remain after review is sought are to be resolved through arbitration. *Id.* § 1401(a)(1). The employer may initiate arbitration within sixty days after learning the result of the plan sponsor's review, or 120 days after the employer requested the review, whichever comes first. *Id.* § 1401(a)(1)(A), (B). If the employer does not initiate arbitration within this time period, the withdrawal liability falls due according to the plan sponsor's schedule. *Id.* § 1401(b)(1). And if the employer does not pay according to schedule, the plan sponsor is to notify the employer of the failure. *Id.* § 1399(c)(5). By then failing to cure its nonpayment, the employer defaults, and the plan sponsor may require immediate payment of the full withdrawal liability. *Id.*

Viewed most favorably to defendants, *see Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), the facts show that MGS con-

tributed to plaintiffs' pension fund pursuant to a collective bargaining agreement. MGS exposed itself to withdrawal liability when it withdrew from the fund in July 1981. Plaintiffs initially sued MGS to collect withdrawal liability in April 1983, but MGS contested the propriety of plaintiffs' notice, and the suit eventually was voluntarily dismissed.

In March 1984, plaintiffs sent Charles Garrett, president of both MGS and Myers & Florence, two notices and payment demands. Plaintiffs' Memorandum in Support of Motion for Summary Judgment [Plf. Mem.], Exs. A, B. In June 1984, Garrett, MGS, and Myers & Florence jointly requested a review of their withdrawal liability. *Id.,* Ex. E. Plaintiffs informed defendants on June 5, 1986 that they had examined the matter but stood by their earlier liability determination. *Id.,* Ex. F. Defendants did not initiate arbitration, and plaintiffs filed this collection action on July 3, 1986. Although little time elapsed between plaintiffs' notice of the review result and their filing of this action, this did not infringe defendants' rights, since the time for defendants to seek arbitration already had expired. *See* 29 U.S.C. § 1401(a)(1)(A), (B).

Plaintiffs argue that the MPPAA mandates arbitration of objections to withdrawal liability assessments, and that defendants, by failing to seek arbitration, waived their right to contest liability before this court. Defendants counter that courts must resolve disputes requiring interpretation of ERISA, particularly provisions other than sections 1381 through 1399. They raise three defenses that they maintain are thus not subject to arbitration: (1) Myers & Florence is not an employer within the meaning of Section 1301(b)(1) and thus is not liable; (2) plaintiffs did not notify defendants as soon as practicable of their liability; and (3) under Section 1405(b), the insolvency or liquidation of one or both defendants reduces their liability.

At first blush, the text of the MPPAA appears unambiguous. It states:

Any dispute between an employer and the plan sponsor of a multiemployer plan

concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration.

29 U.S.C. § 1401(a)(1) (1982). Since sections 1381 through 1399 deal with the methods by which the plan sponsor determines and assesses liability, this passage seems to require arbitration in all cases.

There are exceptions. Since arbitrators have no authority to interpret the Constitution, for example, employers raising constitutional defenses may sidestep arbitration in favor of immediate judicial review. *Centennial State Carpenters Pension Trust Fund v. Woodworkers of Denver, Inc.*, 615 F.Supp. 1063, 1068 (D.Colo.1985). Where statutory interpretation is required, courts are almost equally divided into two camps: half hold failure to arbitrate waives the right to judicial review; half permit statutory defenses to be raised first in the district court. *See Robbins v. Chipman Trucking Inc.*, No. 85 C 1489, mem. op. at 512 (N.D.Ill. Dec. 8, 1986) [Available on WESTLAW, DCT Database], and cases it cites.

Opinions articulating the nonwaiver position contend that the court has discretion whether to require arbitration of issues involving statutory interpretation, especially where pure questions of law are presented. *E.g., T.I.M.E.-DC, Inc. v. Management-Labor Welfare & Pension Funds, of Local 1730*, 756 F.2d 939, 945 (2d Cir.1985); *I.A.M. National Pension Fund Benefit Plan C v. Stockton TRI Industries*, 727 F.2d 1204, 1210 (D.C.Cir.1984). In applying this prudential course, the Second Circuit identified three policies favoring arbitration: deference to Congress' statutory scheme, application of the arbitrator's expertise, and judicial economy. *T.I.M.E.-DC*, 756 F.2d at 945. These considerations, it held, did not bar the court from deciding—without first requiring arbitration—whether a transfer of assets, implicating a section of ERISA other than sections 1381 to 1399, had occurred. *Id.* at 943–45. The Second Circuit stated that it found no congressional intent that arbitrators should decide issues outside the scope of sections 1381 to 1399. *Id.* at 945. It noted further that no facts were in dispute,

so there was no need to defer to the arbitrator's familiarity with labor and pension matters. *Id.* Finally, since the loser was likely to appeal the arbitrator's decision, mandating arbitration would not conserve judicial resources. *Id.*

But the policies of congressional intent, arbitrator expertise, and judicial economy cut in favor of arbitration where a dispute presents mixed questions of law and fact. *See, e.g., Combs v. Adkins & Adkins Coal Co.*, 597 F.Supp. 122, 127 (D.D.C.1984). Congress, concerned about the fiscal stability of multiemployer plans, enacted the MPPAA to discourage employer withdrawals. *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 722–24, 104 S.Ct. 2709, 2714–15, 81 L.Ed.2d 601 (1984). Accordingly, it established a comprehensive framework for dispute resolution and authorized harsh penalties for withdrawal. *Peick v. Pension Benefit Guaranty Corp.*, 539 F.Supp. 1025, 1030–34, 1049 (N.D.Ill. 1982), *aff'd*, 724 F.2d 1247 (7th Cir.1983), *cert. denied*, 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 855 (1984). A key part of this statutory framework is Section 1401, which requires prompt arbitration of disputes. *Robbins, supra*, at 13–14. Clearly, Congress did not intend to let employers elude arbitration and delay paying withdrawal liabilities. *Id.* at 14; *Terson Co. v. Pension Benefit Guaranty Corp.*, 3 Employment Benefits Cas. (BNA) 2372, (N.D.Ill. 1982). This congressional preference for arbitration should be respected. *Board of Trustees of the Western Conference of Teamsters Pension Trust Fund v. F.C. Parsons, Inc.*, 5 Employee Benefits Cas. (BNA) 2277, 2279 (W.D.Wash.1984).

Moreover, the arbitrator's knowledge of labor and pension matters and of ERISA's framework likely will assist determination even of facts defined outside sections 1381 to 1399, such as employer status. *Robbins, supra*, at 19–20. *See Republic Industries, Inc. v. Teamsters Joint Council No. 83 of Virginia Pension Fund*, 718 F.2d 628, 634 (4th Cir.1983), *cert. denied*, 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984); *F.C. Parsons*, 5 Employment Benefits Cas. (BNA) at 2280. Even if an arbitrator's

award is appealed, her review may minimize judicial effort by paring the issues the court must consider. *Robbins, supra,* at 20–21. *Cf. Combs v. Bowling & Hildebrand Trucking Co.,* No. 84–1451, mem op. at 10 (D.D.C. Feb. 21, 1985) ("Judicial economy is best served by encouraging compliance with the statute's dispute resolution provisions, not by rewarding a party's refusal to even attempt to meet those requirements.").

We need not decide whether arbitration of the issues at hand is mandatory or discretionary, since an examination of the prudential concerns set forth in *T.I.M.E.–DC* leads us to conclude that defendants here should have arbitrated their objections to plaintiffs' assessment. Although at least two of their defenses touch upon portions of ERISA other than sections 1381 to 1399, each of the three defenses relates to the existence of defendants' liability. That issue ought to be reviewed first by an arbitrator. *Cf. Combs v. Western Coal Corp.,* 611 F.Supp. 917, 922 (D.D.C.1985) (in failing to initiate arbitration properly, defendant conceded existence and amount of liability). None of the defenses involves pure statutory interpretation; rather, each requires fact determinations an arbitrator would be competent to make. *See* Plaintiffs' Reply Memorandum in Support of Their Motion for Summary Judgment at 8–14.

Nor do we find that judicial economy interests weigh in favor of our reaching the merits of these defenses. We recognize that, given the huge amounts of money at stake in these cases, losers frequently will appeal the arbitrator's decision. But to allow defendants to circumvent arbitration of certain issues, while requiring it for others, would engender piecemeal litigation and scarcely ease the district court's burden.

Given their involvement in the first suit, defendants cannot deny that they knew plaintiffs sought to hold them jointly and severally liable for withdrawing from the pension fund. Indeed, they objected to this joint assessment and raised the other defenses pressed here when they asked the fund for a review. *See* Plf. Mem., Ex. E. They could have preserved these objections for judicial review either by initiating arbitration according to Section 1401 or by seeking a declaratory judgment. *See Banner Industries, Inc. v. Central States, Southeast and Southwest Areas Pension Fund,* 657 F.Supp. 875, 884 (N.D.Ill.1987). They did not do so. Defendants have forfeited their right to a decision on the merits from this court, and plaintiffs are entitled to summary judgment regarding defendants' withdrawal liability.

Plaintiffs further ask us, pursuant to Section 1399(c)(5), to hold defendants in default and require immediate payment of the balance owed plus interest, costs, and attorneys fees to be determined according to Section 1132(g)(2). Plf. Mem. at 11–13. They submit as evidence of default a past due notice dated April 26, 1984, which warns defendants that if they do not resume payments, "the entire withdrawal liability in the amount of $315,968.71 shall be due immediately." *Id.,* Ex. C at 2. Plaintiffs indicate, however, that this amount was inaccurate, since MGS already had paid some $12,000 to the fund, reducing its withdrawal liability to $303,847.82. *Id.* at 13 n. 5. We question whether this inaccurate notice was adequate, and deny plaintiffs' motion for summary judgment on the default issue.

## ORDER

Plaintiffs' motion for summary judgment on the issue of defendants' withdrawal liability is granted. Plaintiffs' motion for summary judgment on the default issue is denied. Plaintiffs are to submit a petition for principal, interest, costs, and fees allowable under 29 U.S.C. § 1132(g)(2) (1982) by June 29, 1987. Defendants are to respond by July 27, 1987; plaintiffs to reply by August 10, 1987. Ruling to be at 9:30 a.m. September 21, 1987. Plaintiffs' motion for interim payments is dismissed as moot.