**TRUSTEES OF the CHICAGO TRUCK DRIVERS, HELPERS AND WAREHOUSE WORKERS UNION (INDEPENDENT) PENSION FUND, Plaintiffs,**

v.

**CHICAGO KANSAS CITY FREIGHT LINE, INC., d/b/a Hoffman Management Corp., Defendants.**

No. 87 C 8204.

United States District Court, N.D. Illinois, E.D.

Aug. 5, 1988.

Joseph M. Burns, Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., for plaintiffs.

David E. Morgans, Williams & Montgomery, Chicago, Ill., Robert J. Harrop, Raymond F. Beale, Jr., Michael A. Thompson, Gage & Tucker, Kansas City, Mo., for defendants.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

The plaintiffs, trustees of the Chicago Truck Drivers Helpers and Warehouse Workers Union (Independent) Pension Fund ("Fund") brought suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. Sections 1381, *et seq.* As sponsors of the Pension Plan, plaintiffs seek to recover the assessment of withdrawal liability, together with liquidated damages, interest, attorneys fees, and costs against defendant Chicago Kansas City Freight Line, Inc., d/b/a Hoffman Management Corporation ("Hoffman").

Presently before the court are two motions: the Fund's motion to compel interim payments and Hoffman's motion for summary judgment. For the reasons set forth below, the Fund's motion to compel interim payments is granted, and Hoffman's motion for summary judgment is denied.

### I. *Overview of the Statutory Framework*

Before examining the facts of this case, we engage in a brief overview of ERISA,

as amended by the MPPAA.[1] Under ERISA, employers may make contributions to one or more pension plans on behalf of all their employees who belong to a participating union. *Flying Tiger Line v. Teamsters Pension Tr. Fund*, 830 F.2d 1241, 1243 (3d Cir.1987). However, when an employer ceased making payments, the pension plan would be left with vested pension obligations which were only partially funded. *Robbins v. Admiral Merchants Motor Freight, Inc.*, 846 F.2d 1054, 1055 (7th Cir. 1988). In order to cure this recurring problem, Congress enacted the MPPAA. *Id.*

The Act addressed this problem by imposing liability on employers who withdraw from multiemployer pension plans. *Grand Union Co. v. Food Employers Labor Relations*, 808 F.2d 66, 67 (D.C.Cir.1987). An employer can avoid withdrawal liability, however, if he meets the detailed statutory requirements of the "sale of assets" exemption provision, 29 U.S.C. Section 1384.[2] *Id.* Under this section, a seller will not suffer immediate liability if the purchaser in a sale of assets transaction agrees to take over the seller's obligation to the plan. Levy, *Employer Withdrawal Liability in the Purchase or Sale of a Business*, 59 Wis.Bar Bull, 13 (May, 1986). Both parties, however, must assure the purchaser's continued participation for five plan years. *Id.; see* 29 U.S.C. § 1384(a)(1). Should the purchaser leave the fund in less than five plan years and fail to pay its entire liability at that time, the seller will be obligated to pay the entire withdrawal which would have been assessed if the exemption did not apply. Levy, *Employer Withdrawal Liability in the Purchase or Sale of a Business*, 59 Wis.Bar Bull. 13 (May, 1986); *see* 29 U.S.C. § 1384(a)(2).

MPPAA's statutory scheme provides for informal, expeditious resolution of withdrawal liability disputes. *See I.A.M. Nat. Pension Fund, Plan A, A. Ben. v. Clinton Engines Corp.*, 825 F.2d 415, 416 (D.C.Cir. 1987); *see generally* 29 U.S.C. §§ 1381–1399. The Act assigns initial responsibility to the plan sponsor for determining whether a withdrawal has occurred, notifying the employer, and collecting the amount due. *Grand Union Co., supra*, 808 F.2d at 68; *see* 29 U.S.C. §§ 1382, 1399(b)(1). On timely request, the employer may request the plan sponsor to conduct a review and explain any aspect of the withdrawal liability. *Grand Union Co., supra*, 808 F.2d at 68; *see* 29 U.S.C. § 1399(b)(2)(A). If a dispute remains between the plan sponsor and employer, the statute mandates arbitration: "Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under Sections 1381 through 1399 of this title, ... shall be resolved through arbitration."[3] *Grand Union Co., supra*, 808 F.2d at 68; 29 U.S.C. § 1401(a)(1).

Any party to the arbitration may seek judicial review of the arbitrator's award. 29 U.S.C. § 1401(b)(2). During the pendency of any dispute, however, the employer must begin making interim payments of the withdrawal liability to the plan. *Marvin Hayes Lines, Inc. v. Central States, etc. Pension Fund*, 814 F.2d 297, 299 (6th Cir.1987); *see* 29 U.S.C. §§ 1399(c)(2), 1401(d).

## II. *Facts*

Prior to March 31, 1981, Hoffman, then known as Chicago Kansas City Freight

---

**1.** The history and purpose of ERISA and the MPPAA has been set forth in *Robbins v. Pepsi-Cola Metropolitan Bottling Co.*, 636 F.Supp. 641, 645–48 (N.D.Ill.1986).

**2.** Under Section 4204 of the MPPAA, 29 U.S.C. Section 1384, a sale of assets by an employer does not result in withdrawal liability as long as the sale meets certain conditions. Among other things, the transaction must meet the following requirements: (1) it must be a *bona fide*, arm's-length sale § 1384(a)(1); (2) the purchaser must have an obligation "for substantially the same number of contribution base units for which the

seller had an obligation to contribute to the plan," 29 U.S.C. § 1384(a)(1)(A); (3) the purchaser must provide a bond to secure its contribution obligation, § 1384(a)(1)(B); and (4) the seller must remain secondarily liable for withdrawals that occur within 5 years after the sale, § 1384(a)(1)(C).

**3.** Under 29 U.S.C. Section 1401(a)(1), either party may initiate the arbitration proceeding within a 60–day period after the earlier of (1) the date of notification to the employer of an assessment of liability, or (2) 120 days after the employer requests review under Section 1399(b)(2)(A).

Lines, Inc., was engaged in the transportation of commodities pursuant to operating authority issued by the Interstate Commerce Commission. Hoffman was subject to various collective bargaining agreements, including one with the Chicago Truck Drivers Union. At the time, the Chicago Truck Drivers Union's collective bargaining agreement required Hoffman, as an employer, to contribute to the Fund on behalf of its employees.

On March 13, 1981, Hoffman entered into an Agreement of Sale and Purchase with Manley Truck Lines, Inc. ("Manley") to sell its operating authority, name and good will, customer accounts and other assets. The sales agreement was subject to Interstate Commerce Commission ("ICC") approval. On March 30, 1981, Hoffman and Manley applied to the ICC for approval of the transfer of Hoffman's interstate operating authority. Temporary authority was granted on April 8, 1981. On April 13, 1981, Manley assumed Hoffman's operations and collective bargaining obligations, including the obligation to contribute to the Fund. Notice of ICC approval of permanent authority was received on July 13, 1981 and the sale was finalized on July 20, 1981.

By letter dated April 21, 1982, the Fund notified Hoffman that the company had completely withdrawn from the Fund on March 31, 1981,[4] and assessed withdrawal liability under ERISA in the amount of $387,820.00. Subsequently, Hoffman notified the Fund that it had sold its assets to Manley. Since the parties had complied with the sale of assets exception to withdrawal liability in 29 U.S.C. Section 1384, the Fund's assessment of withdrawal liability against Hoffman was stayed. However, the statute requires that the seller remain secondarily liable to the Fund in the event the purchaser withdraws from the Plan within the first five plan years beginning after the sale of assets. 29 U.S.C. § 1384(a)(2)(A). In the event Manley fails

to make any withdrawal liability payments when due, Hoffman's withdrawal liability would then be reinstated. *See* 29 U.S.C. § 1384(a)(2)(B).

On February 25, 1987, Manley filed under Chapter 11 of the Bankruptcy Code. On April 9, 1987, the Fund notified Manley of its withdrawal liability and established a payment schedule which was to begin July 1, 1987. When Manley failed to make its first installment, by a letter dated April 17, 1987, the Fund advised Hoffman that it intended to hold Hoffman secondarily liable under Section 1384(a)(2) as a result of Manley's Chapter 11 bankruptcy filing. In another letter dated September 1, 1987, the Fund demanded that Hoffman commence its quarterly withdrawal payments, with the first payment being due on September 15, 1987.

Having received no payment from Hoffman, the Fund brought this collection action on September 22, 1987. In its complaint, the Fund alleges that Hoffman is liable under Section 1384(a)(2) because Manley's bankruptcy filing was a complete withdrawal which occurred prior to the end of the fifth plan year.

On November 2, 1987, Hoffman requested the Fund to provide certain information and to review its determination that Manley had withdrawn during the fifth plan year pursuant to 29 U.S.C. Section 1399(b)(2)(A) [5]. Hoffman filed its answer on November 18, 1987, denying liability on the ground that if Manley's Chapter 11 filing in February, 1987 did constitute a withdrawal, then it occurred more than five plan years after the company's sale of assets to Manley. In a letter dated December 11, 1987, Hoffman renewed its previous request for information and review. Hoffman further advised the Fund of its intention to request arbitration on or before February 28, 1988, with regard to the fifth plan year issue and any other disputed matters. *See* 29 U.S.C. Section 1401(a)(1).

---

4. But *see infra* note 4.

5. In preparing a response to Hoffman's request, the Fund determined that Hoffman completely withdrew from the Pension Plan on April 13, 1981 (subject to the ICC approval given July 20, 1981) and not as previously believed on March 31, 1981. Plaintiff's reply brief, at p. 1.

The Fund has moved to compel interim payments. Hoffman has moved for summary judgment on the ground that the company has no obligation to the Fund because its sale of assets to Manley, on March 13, 1981, preceded Manley's bankruptcy filing by more than five plan years.

There are no disputed issues of facts in this case. There is, however, a dispute as to the date when Hoffman's "sale of assets" to Manley occurred for purposes of calculating plan years under Section 1384.[6] It is Hoffman's position that the "sale" occurred on March 13, 1981, the date of execution of the Sales and Purchase Agreement. On the other hand, the Fund contends that the "sale" date was July 20, 1981, not March 13, 1981. The Fund argues that the sale occurred only after the ICC approved the transfer of operating authority to Manley.

If the sale occurred on March 13, 1981, the date of execution of the agreement, then Manley's Chapter 11 filing occurred 11 months after the end of the fifth plan year. Consequently, Hoffman would not be liable under Section 1384(a)(2). If, however, the sale did not occur until ICC approval, then Hoffman would be liable since Manley's filing occurred within the fifth plan year.

### III. *Arbitration*

Hoffman claims that arbitration may be bypassed because this case involves a question of pure statutory interpretation[7]. We disagree. Twenty Nine U.S.C. Section 1401(a)(1) mandates the procedures to be employed when resolving disputes arising under the MPPAA. It states:

Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under Section 4201 through 4219 [29 U.S.C. §§ 1381–1399] shall be resolved through arbitration.

Although the arbitration provision is not viewed as a prerequisite to district court jurisdiction over disputes, the provision is viewed as an exhaustion of administrative remedies. *Robbins v. Admiral Merchants Motor Freight, Inc.*, 846 F.2d 1054, 1056 (7th Cir.1988). The general doctrine which requires the exhaustion of administrative remedies before judicial relief can be sought is subject, however, to a number of exceptions. *Central States, etc. Pension Fund v. 888 Corp.*, 813 F.2d 760, 764 (6th Cir.1987); *see also Robbins v. McNichols Transportation Company*, 819 F.2d 682, 684 (7th Cir.1987), for a list of cases. For example, an employer raising constitutional defenses may sidestep arbitration in favor of immediate judicial review. *Central States, etc. Pension Fund v. MGS Transp. Inc.*, 661 F.Supp. 54 (N.D. Ill.1987). Another example is if an employer will be irreparably harmed by following administrative procedure, then the employer may seek judicial relief directly. *Flying Tiger Line v. Teamsters Pension Tr. Fund*, 830 F.2d 1241, 1252–1253 (3d Cir. 1987).

Some courts have held that the requirement of the exhaustion doctrine is also not applicable where the question is solely one of statutory interpretation. *E.g., I.A.M. Nat. Pension Fund Ben., Plan C v. Stockton Tri Industries*, 727 F.2d 1204 (D.C.Cir. 1984); *T.I.M.E.—D.C., Inc. v. Management—Labor Funds Welfare & Pension Funds*, 756 F.2d 939 (2d Cir.1985); *Dorn's Transp., Inc. v. Teamsters Pension Trust Fund*, 799 F.2d 45 (3d Cir.1986). Other courts have differed, however, holding that the existence of an issue of statutory interpretation, standing alone, does not justify bypassing arbitration. *E.g., I.A.M. Nat. Pension Fund, Plan A, A. Ben. v. Clinton Engines Corp.*, 825 F.2d 415 (D.C.Cir. 1987); *Teamsters Pension Trust Fund v. Allyn Trans. Co.*, 832 F.2d 502 (9th Cir. 1987); *Flying Tiger Line v. Teamsters Pension Tr. Fund*, 830 F.2d 1241 (3d Cir. 1987). In this latter group of cases, the courts have identified three policy consider-

---

**6.** The plan year is a twelve-month period commencing on April 1 and ending on March 31.

**7.** The plaintiffs assert that the Fund is entitled to withdrawal liability and that defendant must submit the dispute to arbitration. However, the plaintiffs failed to pursue this later line of argument in their briefs.

ations favoring arbitration: congressional intent, arbitrator expertise, and judicial economy. *Central States, etc. Pension Fund v. MGS Transp. Inc.,* 661 F.Supp. 54, 56 (N.D.Ill.1987). These policy considerations are relevant here.

First, "courts interpreting Section 1401(a)(1) have been consistent in concluding that initial recourse to arbitration is a statutory direction. '*Any* dispute over withdrawal liability as determined under the enumerated statutory provisions *shall* be arbitrated.'" *Robbins,* 846 F.2d at 1056, (quoting *Clinton Engines,* 825 F.2d at 417) (emphasis added). "'Arbitrate first' is indeed a rule Congress stated unequivocally." *Grand Union Co. v. Food Employers Labor Relations Association,* 808 F.2d 66, 70 (D.C.Cir.1987). An exception for cases raising questions of statutory interpretation would "drastically diminish the prime role Congress so plainly assigned to arbitration in the MPPAA dispute resolution scheme." *Id.* This congressional preference for arbitration should be respected. *Central States, etc. Pension Fund v. MGS Transp. Inc.,* 661 F.Supp. 54, 56 (N.D.Ill.1987).

■ Hoffman's dispute hinges upon the application of Section 1384. Section 1384 falls within the range of disputes Congress expressly designated should be resolved through arbitration. We conclude, then, that disputes under 29 U.S.C. Section 1384 must be resolved through the MPPAA's general dispute resolution scheme.

Second, this case "bristles" with issues within the special knowledge and expertise of an arbitrator skilled in the areas of labor and pension law. *See Grand Union Co., supra,* 808 F.2d at 70, n. 5. For example, an arbitrator is "well equipped" to determine in this case (1) whether a sale of assets occurs upon execution of an agreement or upon ICC approval within the meaning of Section 1384; (2) whether Manley contributed substantially the same number of days as Hoffman had contributed before its withdrawal; (3) whether Manley's filing of bankruptcy constitutes a withdrawal pursuant to Section 1383(a); (4) whether Section 558(d) of the Deficit Reduction Act ("DEFRA") governs a dispute under Section 1384.

Although this court concludes that there are no genuine issues of fact based upon the present factual submissions and allegations before it, we note that there may be issues of contract interpretation in which further factual determinations may be required. *See Flying Tiger Line, supra,* 830 F.2d at 1255 (a question that is "purely one of statutory interpretation" is extremely rare in an ERISA case). The fact that the arbitrator's role includes the application of the statutory provisions to the facts it finds does not render these issues inappropriate for arbitration. *Flying Tiger Line, supra,* 830 F.2d at 1255. In any event, we decline to differentiate between legal and factual questions in this case, since the Act's statutory framework dictates that arbitration should be the initial forum.

In addition, the arbitrator will correct any factual and legal errors made by the Fund. Specifically, the arbitrator here may need to recalculate the alleged withdrawal liability and requested interim payment. In the court's opinion, the judgment of an arbitrator would have special value.

Lastly, arbitration promotes judicial economy and judicial restraint because the arbitrator's decision may dispose of the suit. *Flying Tiger Line, supra,* 830 F.2d at 1248. Even if a party appeals the arbitrator's decision, the court will have the benefit of the arbitrator's analysis as well as better framed legal arguments. *Id.; I.A.M. Nat. Pension Fund, Plan A, A. Ben., supra,* 825 F.2d at 422. To allow defendants to circumvent arbitration of some, but not all, issues would lend itself to piecemeal litigation—a burden district courts can ill afford. *See Central States, etc. Pension Fund v. MGS Transp. Inc.,* 661 F.Supp. 54, 57 (N.D.Ill.1987). Accordingly, this court finds that judicial economy interests weigh heavily in favor of arbitration in the first instance.

■ On the basis of Congress' clearly expressed intent and policy considerations, we conclude that Hoffman was bound to have resorted to arbitration in order to raise its defenses to the Fund's assessment

of withdrawal liability. We thus follow a growing number of courts that have had the occasion to interpret the mandate of Section 1401(a) and have resoundly concluded: even disputes that raise solely questions of statutory interpretation should be arbitrated first.

In the case before us, Hoffman has not availed itself of arbitration.[8] "MPPAA makes clear that time limits are strictly construed and that failure to initiate arbitration within those time limits constitutes a waiver of the opportunity to do so." *Banner Industries, Inc. v. Central States, etc. Pension Fund,* 657 F.Supp. 875, 884 (N.D.Ill.1987). However, "this strict forfeiture rule may be relaxed where the employer has taken certain actions which warrant a tolling of the statutory time frames." *Id.*

In *Banner,* the court held that the filing of suit by the employer tolled the statutory time frames set forth in Section 1401(a)(1). The court found that the employer had not rested on its rights, but rather took immediate and affirmative steps to contest its liability. *Id.*

In this case, unlike *Banner,* the Fund rather than the employer filed suit. We find, however, the fact that Hoffman did not initiate the filing of a declaratory or injunctive action is not controlling here.

The Fund filed suit on September 22, 1987, well before the period for initiating arbitration had run. In a letter dated November 2, 1987, Hoffman requested review of the Fund's determination that Manley had withdrawn during the fifth plan year. Hoffman renewed his request in a letter dated December 11, 1987. In addition, Hoffman contested its liability in this court by filing its answer and summary judgment motion, raising its defenses therein. Thus, Hoffman has actively pursued its defenses in this court.

Although such affirmative steps to contest its liability are insufficient, in themselves, to toll the statutory time frame, we find that where a determination is also made, as here, that arbitration is not only proper but possible, the time for initiating arbitration should be tolled. *See Banner, supra,* 657 F.Supp. at 885 (if the issue is whether one of the parties falls within the arbitrator's jurisdiction, considerations of fairness dictate that the time for pursuing arbitration be tolled until a determination is made that the party is subject to the mandatory arbitration provisions). Under these circumstances, we find that Hoffman has not forfeited its right to initiate arbitration and that the filing of this action tolled the limitations period.

### IV. *Hoffman's Motion for Summary Judgment*

Since this court finds that the merits of this case must be decided in arbitration, Hoffman's motion for summary judgment is denied.

### V. *Fund's Motion to Compel Interim Payments*

The Fund has filed a motion to compel interim payments pursuant to Section 1401(b)(1).[9] The statutory language is clear that during the pendency of any disputes, interim payments of withdrawal liability must be made to the plan. *Marvin Hayes Lines, Inc. v. Central States, etc. Pension Fund,* 814 F.2d 297, 299 (6th Cir. 1987); *see* 29 U.S.C. Sections 1399(c)(2), 1401(d). The congressional purpose behind a collection procedure has been characterized as "pay now, dispute later." *Robbins v. McNicholas Transp. Co.,* 819 F.2d 682, 685 (7th Cir.1987).

Here, Hoffman has not sufficiently shown that compelling interim payments would impose economic hardship or unnec-

---

8. The court's determination that Hoffman has not initiated arbitration is based upon the representations made by the parties in their pleadings before the court. Nothing in the pleadings indicates to the contrary.

9. Twenty-nine U.S.C. Section 1401(b)(1) provides:

If no arbitration proceeding has been initiated pursuant to subsection (a) of this section, the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal Court of competent jurisdiction for collection.

essarily harsh results.[10] *See id.* at 685. Even if an arbitrator later determines that the compelled payment of money was in error, such an error does not, in itself, amount to irreparable harm. *Id.* Accordingly, the Fund's motion to compel interim payments is granted.

### VI. *Conclusion*

We find that the defenses Hoffman sought to raise in the Fund's collection action falls within the ambit of 29 U.S.C. Section 1401(a) as issues that should have been submitted to arbitration. We further find that, in this case, Hoffman has not forfeited the right to initiate arbitration. However, Hoffman is compelled to make interim payments. Accordingly, the Fund's motion to compel interim payments is granted and Hoffman's motion for summary judgment is denied.

---

**10.** Since the court declines to reach the merits in this case and has ordered arbitration, the court further declines to determine whether the

Fund is likely to succeed on the merits for purposes of compelling interim payments.