CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, a pension trust, and Loran W. Robbins, Marion M. Winstead, Robert C. Sansone, Robert J. Baker, Howard McDougall, Arthur H. Bunte, R. Jerry Cook, and R.V. Pulliam, the pension trustees, Plaintiffs,

v.

JOHNCO, INC. and R.D. Motor Express, Incorporated, Indiana corporations, Defendants.

No. 87 C 5539.

United States District Court, N.D. Illinois, E.D.

Aug. 11, 1988.

Linda J. Gershon, Thomas J. Angell, Thomas C. Nyhan, Central States Law Dept., Chicago, Ill., for plaintiffs.

Hugh L. Moore, Betsy L. Anderson, Lord, Bissell & Brook, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

This case comes before the court on plaintiff's motion for summary judgment. Plaintiff Central States, Southeast and Southwest Areas Pension Fund (the "Fund") is a multiemployer pension fund bringing a collection action against an employer who has withdrawn from the fund. Plaintiff brings this action under the authority of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. Sections 1001 *et seq.* (1982) ("MPPAA"). The court finds that summary judgment is appropriate under Fed.R.Civ.P. 56 because there is no disputed issue of material fact. The court enters judgment for the plaintiff and finds that defendant is unable to limit any amounts owing plaintiff under 29 U.S. C. Sections 1405(a) and 1405(b) because defendant failed to request arbitration of the limitations as required by MPPAA procedures.

Congress enacted ERISA in 1974 to ensure that employees and their beneficiaries would not be deprived of anticipated benefits from their private pension plans. If an employer withdraws from a fund after its employees' rights have vested but before the employer has fully funded its portion, the fund is left with unfunded liabilities. MPPAA, enacted in 1980, protects employees and beneficiaries in financially distressed multiemployer plans and encourages the growth and maintenance of multiemployer plans through an intricate statutory procedure governing employer withdrawal liability.

When an employer withdraws from a fund, the employer must pay its share of the plan's unfunded vested benefit liability. 29 U.S.C. § 1381 (1982). The plan itself is charged with responsibility for calculating the sum due and must send the employer notice of the amount and a demand within a reasonable time after the withdrawal. *Id.* §§ 1382, 1399(b)(1).

If the employer objects to the amount or existence of liability, it must within 90 days ask the plan for review. *Id.* § 1399(b)(2)(A). After reasonable review, the plan must notify the employer of its decision. *Id.* § 1399(b)(2)(B). If the parties are still not in agreement, MPPAA provides for the disputes to be resolved through arbitration. *Id.* § 1401(a)(1). Either party may initiate arbitration within a 60–day period after the earlier of either the date the plan notifies the employer of the results of its review or 120 days after the employer's request for review. *Id.* The parties may jointly initiate arbitration within the 180–day period after the fund's initial demand for payment. *Id.*

If no arbitration takes place, the amounts demanded by the fund become due and owing and the plan may file suit in state or federal court for collection. *Id.* § 1401(b)(1). If arbitration does take place, either party may file an action in federal court to enforce, vacate, or modify the arbitrator's award. *Id.* § 1401(b)(2).

The facts in this case are undisputed. Defendant R.D. Motor Express ("R.D. Motor") is a subsidiary of defendant Johnco, Inc. ("Johnco") and the two are treated as a single employer for purposes of assessment and calculation of withdrawal liability. R.D. Motor was subject to a collective bargaining agreement with the Teamsters Union which required R.D. Motor to make contributions to plaintiff pension fund. On or about August 3, 1985, R.D. Motor permanently ceased operations and ceased making contributions to the Fund. On October 25, 1985, the pension fund sent a notice and demand to Johnco stating that withdrawal liability in the amount of $334,-301.13 was due. This liability could be discharged by monthly payments of $7,265.62 starting December 1, 1985. When Johnco failed to pay, the Fund sent a past due notice and demand forewarning the employer of the consequence of refusing to pay. R.D. Motor received this notice on December 23, 1985.

Although still failing to pay, by letter dated January 24, 1986, Johnco requested review of its withdrawal liability assessment. In the letter, Johnco stated that R.D. Motor Express was evaluating a sale of all of its assets and, depending on the results of the sale, a reduction in withdrawal liability under 29 U.S.C. Section 1405(a) or (b) would apply. Section 1405(a) limits an employer's withdrawal liability where there has been a bona fide sale of assets. Section 1405(b) limits an employer's liability where the employer is insolvent and undergoing liquidation or dissolution.

On June 9, 1986, the Fund notified Johnco of the results of the review. The Fund affirmed the original withdrawal assessment and declined to apply the limitations of liability set out in 29 U.S.C. Sections 1405(a) and (b). The Fund did not apply Section 1405(a) because it felt that a sale of assets several months after withdrawal was not a withdrawal in connection with a sale. With respect to Section 1405(b), the Fund stated that Johnco did not supply requested financial information to substantiate its position.

Thereafter, neither party initiated arbitration proceedings. In due course, the Fund filed this action to collect the outstanding withdrawal liability plus interest, statutory liquidated damages, attorneys fees and costs.

Defendants do not dispute that some withdrawal liability is due and owing. Defendants instead dispute the amount of withdrawal liability, arguing that the amount claimed by the Fund should be reduced under the provisions of 29 U.S.C. Section 1405(a) or (b). Although plaintiffs claim that defendants are precluded from raising any defense to complete withdrawal liability because defendants failed to arbitrate any defenses within the time allotted, defendants maintain that they may raise Sections 1405(a) and (b) issues because (1) the MPPAA does not require arbitration of Section 1405 issues; (2) arbitration under MPPAA is not required for questions of statutory interpretation; (3) the arbitration provisions of MPPAA, if applied to this case, would result in denial of procedural due process to defendants. The court addresses each of these arguments in order.

## I.

Defendants first argue that the statute does not mandate arbitration of Section 1405 issues. The text of MPPAA provides:

> Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under Sections 1381 through 1399 of this title shall be resolved through arbitration.

29 U.S.C. Section 1401(a)(1) (1982). Defendants argue that Section 1405 does not fall within Sections 1381–1399, thus a Section 1405 dispute does not have to be arbitrated.

Although defendants' argument is logical, the structure of the statute indicates that Congress intended Section 1405 disputes be arbitrated. Most importantly, Section 1381(b)(1)(D), the provision detailing how a pension fund is to calculate withdrawal liability, requires funds to consider Section 1405 in their calculations.[1] Thus a fund's determination of withdrawal liability under Section 1381 necessarily takes into consideration the employer's insolvency or sale of assets. In addition, Section 1401(a)(3)(A) cross references Sec-

---

1. Section 1381(a) and (b) provides:
   (a) If an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability.
   (b) For purposes of subsection (a) of this section—
   (1) The withdrawal liability of an employer to a plan is the amount determined under Section 1391 of this title to be the allocable amount of unfunded vested benefits, adjusted—

(A) first by any de minimus reduction applicable under section 1389 of this title,
(B) next, in the case of a partial withdrawal, in accordance with section 1386 of this title,
(C) then, to the extent necessary to reflect the limitations on annual payments under section 1399(C)(1)(B) of this title; and
(D) *finally, in accordance with section 1405 of this title.*
(emphasis added)

tion 1405.[2] Because issues under Section 1405 are part of the calculus for determining withdrawal liability under Section 1381 and Section 1391, those issues should be arbitrated under Section 1401(a). *See generally, Canario v. Byrnes Exp. & Trucking Co., Inc.*, 644 F.Supp. 744 (E.D.N.Y. 1986), *vacated on other grounds*, 652 F.Supp. 385 (1987).

## II.

Courts have recognized exceptions to the Section 1401 arbitration requirement. Courts liken the MPPAA's arbitration requirement to the general rule that a party must exhaust its administrative remedies before it can invoke the jurisdiction of a court. Where the traditional reasons for invoking the exhaustion doctrine are not present, courts have allowed parties to bypass the MPPAA's arbitration requirement. *See e.g. Dorn's Transp. v. Teamsters Pension Trust Fund*, 787 F.2d 897 (3d Cir. 1986); *T.I.M.E.–D.C. v. Management–Labor W. & P. Funds, Etc.*, 756 F.2d 939 (2d Cir.1985); *I.A.M. Nat. Pension Fund Ben. v. Stockton Tri Ind.*, 727 F.2d 1204 (D.C. Cir.1984). Thus, employers raising constitutional defenses have been allowed to proceed directly to judicial review without arbitration. *See Republic Industries v. Central Pa. Teamsters*, 693 F.2d 290 (3d Cir. 1982). Likewise, some courts allow employers to bypass arbitration when an issue of statutory interpretation, especially a pure question of law, is involved. *See e.g. T.I.M.E.–D.C., Inc. v. Management–Labor W. & P. Funds, Etc., supra; I.A.M. Nat. Pension Fund Ben. v. Stockton Tri Ind., supra.* Other courts, however, expressly decline to except issues of statutory interpretation from arbitration. *See Teamsters*

*Pension Trust Fund v. Allyn Transp. Co.*, 832 F.2d 502 (9th Cir.1987).[3]

Defendants' second argument is that this case involves only questions of statutory interpretation and thus the court should address the questions without first requiring arbitration. In effect, defendants are submitting that the policies underlying the arbitration exhaustion requirement would not be advanced by sending the issues in this case to arbitration. In *T.I.M.E.–D.C., Inc. v. Management–Labor Welfare & Pension Funds of Local 1730*, 756 F.2d 939 (2d Cir.1985), the Second Circuit identified three traditional exhaustion policies which are implicated in Congress' requirement for arbitration. These policies are: (1) a need for the arbitrator's superior expertise in labor matters; (2) promotion of judicial economy; and (3) deference to the statutory scheme Congress set up. *Id.* at 945. The court finds that the issues in this case do not involve purely questions of statutory construction and do implicate the policies favoring arbitration.

In this case, the defendants challenge the amount of withdrawal liability. *See Id.* at 944 ("... if an employer disputes *the amount* of its withdrawal liability, then it must proceed to arbitration.") (emphasis in original). This amount will vary depending on whether the Section 1405 limitations apply. Whether those sections apply is necessarily a question involving both factual issues and statutory interpretation. The plaintiff denied defendants the benefit of Section 1405 for two stated reasons: first, because of the timing of defendants' sale of assets and second, because defendants did not substantiate their insolvency. The resolution of these two issues—the timing of the sale and insolvency—would involve

---

**2.** Section 1401(a)(3)(A) provides:

For purposes of any proceeding under this section, any determination made by a plan sponsor under sections 1381 through 1399 of this title and section 1405 of this title is presumed correct unless the party contesting the determination shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous.

**3.** For a discussion of whether issues of pure statutory interpretation should be submitted to arbitration, *see Trustees of the Chicago Truck*

*Drivers, Helpers and Warehouse Workers Union, etc. v. Chicago Kansas City Freight Line, etc.*, 694 F.Supp. 469 (N.D.Ill.1988). The court does not reach the question whether issues of statutory interpretation must be submitted to arbitration in this case because the court finds that this case does not involve pure questions of statutory interpretation. Instead, as more fully discussed herein, the court finds that this case involves factual issues which should be decided by an arbitrator.

the type of fact finding where an arbitrator's expertise is typically involked, as well as some statutory interpretation. *See Central States, Etc., Pension Fund v. MGS Transp.,* 661 F.Supp. 54, 57 (N.D.Ill.1987).

Further, to hold otherwise would interfere with the statutory scheme Congress created. A more rational and orderly procedure would require an employer to raise Section 1405 defenses, as he must other defenses, in front of an arbitrator instead of going to a district court in the first instance. Otherwise, arbitrations where insolvency is an issue could be stalled until after proceedings in the district court. *See Amal. Cotton Garment, Etc. v. Baltimore Sportswear,* 632 F.Supp. 641, 642 (S.D.N.Y. 1986). Nor would such a system promote judicial economy if defendants could circumvent arbitration of certain issues, while arbitration is mandatory for others. The issues would be presented to both forums in a piecemeal fashion. *See Central States, Etc. Pension Fund v. MGS Transp.,* supra, 661 F.Supp. at 57. The court is mindful of the Seventh Circuit's recent admonition that:

> arbitration is the preferred method for resolving pension plan disputes and [ ] failure to arbitrate will have adverse consequences.

*Robbins v. Admiral Merchants Motor Freight, Inc.,* 846 F.2d 1054, 1056 (7th Cir. 1988).

### III.

Finally, defendants raise a constitutional due process challenge to arbitrating Section 1405(a) issues.[4] Section 1405(a) provides for a limit on withdrawal liability where the employer withdraws in connection with a sale of its assets. Defendants argue that Section 1405(a) does not contain

a time restriction within which the sale of assets must be accomplished, whereas MPPAA requires arbitration of disputes within 180 days of the fund's initial notice to the employer. Defendants claim a due process violation if MPPAA was applied to require an employer to arbitrate the issue of a Section 1405(a) reduction in liability *before* the employer had the opportunity to fully consummate the sale of its assets. The employer would be arbitrating the applicability of a statutory provision to a situation that has not yet occurred. Defendants argue that the employer would suffer a serious financial and strategic disadvantage because it would not have a full opportunity to arbitrate the applicability of Section 1405(a) and, thereafter, the arbitrator's factual findings would be entitled to a presumption of correctness rebuttable only by a clear preponderance of the evidence.

Defendants cite *United Retail and Wholesale Employees Pension Plan v. Yahn & McDonnell,* 787 F.2d 128 (3d Cir. 1986), as support for their due process challenge. There, the Third Circuit found that the MPPAA violated the procedural due process right to an impartial decision maker. As a cure for this violation, the court severed the Section 1401(a)(3)(A) provision that the arbitrator accord a presumption of correctness to the fund's determination of liability. The court found the remainder of the statute satisfied constitutional strictures. Defendants in this case do not appear to challenge the impartiality of the decision maker but instead challenge the adequacy and fairness of MPPAA procedures. Although both types of challenges pertain to procedural due process rights, the analysis for each is different. *Id.* 787 F.2d at 137.

---

**4.** Plaintiff argues that defendants lack standing to raise this constitutional issue. The court does not agree and reaches the merits of defendants' claim. Plaintiff argues that because defendants have not arbitrated their disputes, the defendants can claim no personal injury from the arbitration procedures and have no standing. As previously noted, many courts find that constitutional challenges to ERISA are not required to be arbitrated before the challenge is raised in federal court. Thus, necessarily, chal-

lenges to the constitutionality of MPPAA's arbitration procedures will involve situations where the challenger has not undergone arbitration. *See Washington Star Co. v. Intern. Typographical,* 582 F.Supp. 301, 308 (D.D.C.1983); *Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund,* 693 F.2d 290 (3d Cir.1982); cf. *Peick v. Pension Ben. Guar. Corp.,* 724 F.2d 1247 (7th Cir.1983) (challenge to constitutionality of MPPAA procedures appropriate issue for declaratory judgment action).

The defendants' challenge is essentially that the 1405(a) procedures in conjunction with 1401 arbitration procedures inadequately guard against error. The Third Circuit identified the appropriate test for this type of claim as the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) which

> requires the court to balance the risk of an erroneous deprivation, the weight of the individual's interest, and the burden on the state of imposing additional safeguards.

*United Retail & Wholesale Employees Pension Plan v. Yahn & McDonnell, supra*, 787 F.2d at 137, *citing Mathews v. Eldridge, supra.*

■ Applying the factors the Supreme Court identified in *Mathews*, this court finds that requiring Section 1405(a) issues to be arbitrated does not violate an employer's procedural due process rights. First and foremost, the court notes that defendants argue they would be at great risk of an erroneous outcome were 1405(a) issues to be arbitrated before completion of a sale of assets. Defendants thus assume that arbitrators would not take into consideration the individual circumstances of a case. The court does not believe that arbitrators would be that inflexible. Further, the court believes that the time periods within which arbitration must be commenced offer employers great leeway in disposing of assets. Although defendants argue that the statute requires arbitration to take place within 180 days of the fund's initial notice, the court finds no provision that arbitration be concluded within the 180-day period. In addition, Sections 1401(a)(1)(A) and (B) provide an alternate time period for commencing arbitration. Thus, the court finds that the risk of an erroneous deprivation under MPPAA procedures is slight.

Likewise, the court finds that the other two *Mathews* factors, the weight of the individual's interest and the burden on the state of providing additional protections, do not require this court to invalidate Congress' carefully constructed statutory system. Thus the court finds no due process violation.

*Remedy*

The plaintiff in this case asks for several items of damages under 29 U.S.C. Section 1132(g), including interest on outstanding withdrawal liability, statutory liquidated damages and attorneys fees. Defendants did not challenge plaintiff's entitlement to these damages were the liability issue decided in favor of plaintiff. Defendants should have an opportunity to evaluate and challenge if appropriate the amounts plaintiff seeks. In addition, plaintiff should provide the court with statements establishing the amounts claimed.