**MARVIN HAYES LINES, INC.,**
**Plaintiff-Appellee,**

v.

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Defendant-Appellant.**

**No. 85–5911.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 23, 1986.

Decided March 20, 1987.

R. Jan Jennings, Branstetter, Kilgore, Stranch, Jennings, Nashville, Tenn., Terence George Craig (argued), Chicago, Ill.,

Bruce Perlin, Louis F. Solimine, Cincinnati, Ohio, for defendant-appellant.

Robert H. Cowan (argued), Wade B. Cowan, Nashville, Tenn., for plaintiff-appellee.

Edward R. Mackiewicz, Baruch A. Fellner, J. Steven Caflisch (argued), Peter H. Gould, Kenton Hambrick, Pension Benefit Guaranty Corporation, Legal Department, Washington, D.C., for amicus, Pension Benefit Guaranty Corporation.

Before MARTIN, GUY and NORRIS, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

The plaintiff, Marvin Hayes Lines, Inc. (Hayes), is a motor common carrier operating in interstate commerce. The defendant, Central States Southeast and Southwest Areas Pension Fund (Fund), is a multiemployer pension plan within the definition of 29 U.S.C. § 1002(37) and 29 U.S.C. § 1381 *et seq.* Hayes had a collective bargaining agreement with Teamsters Freight Employees Local Union 480 of Nashville, Tennessee (Local 480). Pursuant to this agreement, Hayes was required to make defined contributions to the fund.

On May 11, 1982, local 480 struck Hayes. On this same date Hayes stopped making contributions to the Fund. The strike continued until January, 1984, at which time a decertification election was held at which the Hayes employees voted to no longer be represented by Local 480.

On May 25, 1984, the Fund sent Hayes a "notice and demand for payment of withdrawal liability" which notice also stated that Hayes had engaged in a "partial withdrawal" from the Fund and specified the effective date of the partial withdrawal to have been May 8, 1982. 29 U.S.C. § 1385. Interim payments in a specified amount were demanded.

In July of 1984, Hayes sought review of this demand by the Fund on the grounds that since it had suspended payments due to a labor dispute that there had been no partial withdrawal, relying on the provisions of 29 U.S.C. § 1398(2). Hayes followed this action with a demand for arbi-

tration under the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1399 (Multiemployer Act) which provides for mandatory dispute resolution procedures. 29 U.S.C. § 1401. Hayes also brought this action to avoid making any interim payments. The Fund counterclaimed seeking an order compelling interim payments pending arbitration. 29 U.S.C. § 1399(c)(2). Pursuant to this counterclaim, the Fund filed a motion for a preliminary injunction to compel Hayes to make the interim payments, which motion was denied. Although the parties are in some disagreement as to the precise basis for the district court's ruling, it is clear that the court denied relief in part at least on the basis of a finding that the determination of May, 1982, as the withdrawal date was "unreasonable and clearly erroneous." Thus, there was no strong likelihood that the Fund would succeed on the merits and therefore could not satisfy the first prong of the four-pronged temporary injunction test. *Usaco Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, (6th Cir. 1982). The district court also reasoned that the labor dispute exception of § 1398 [1] "applies ... [and] that an employer involved in a labor dispute who has not taken any action permanently terminating the plan, does not incur withdrawal liability even though his " 'obligation to contribute' under 29 U.S.C. § 1392 may have ceased because of an impasse." (App. 8).

Although we agree with the district court that the Fund chose an erroneous date for the start of withdrawal liability payments, we nonetheless find it necessary to vacate the order denying the preliminary

injunction and remand for further proceedings.[2]

## I.

The Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980, provides a statutory framework for the procedures to be followed when an employer seeks to partially or permanently withdraw from a multiemployer pension plan. The procedures are lengthy and complex and we need only reference them in part as they relate to the issues here.

■ In general, when an employer withdraws from a multiemployer pension plan, it is compelled to make withdrawal liability payments pursuant to a payment schedule determined by the Plan [3] in accordance with the statute. Recognizing that the employer and the Plan may not always be in agreement as to the computation of withdrawal liability, the statute provides detailed dispute resolution procedures. 29 U.S.C. §§ 1399 and 1401. It is clear that during the pendency of any dispute, however, interim payments of withdrawal liability must be made to the Plan.[4] If errors are found in the original computation, these are to be corrected either by the arbitrator, 29 U.S.C. § 1401(d), or by judicial review, 29 U.S.C. § 1401(b)(2).

## II.

■ There is no dispute that Hayes made a partial withdrawal from a multiemployer pension plan.[5] There is a dispute,

---

1. Notwithstanding any other provisions of this part, an employer shall not be considered to have withdrawn from a plan solely because— ... (2) an employer suspends contributions under the plan during a labor dispute involving its employees." 29 U.S.C. § 1398(2).

2. This amended opinion replaces the opinion filed December 1, 1986.

3. "The term 'employee benefit plan' or 'plan' means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3).

4. 29 U.S.C. § 1399(c)(2) states:
   Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.

5. Under 29 U.S.C. § 1385(a)(2), "there is a partial withdrawal by an employer on the last day of a plan year if for such plan year— ... (2) there is a partial cessation of the employer's contribution obligation." 29 U.S.C. § 1385(b)(2)(A) provides that:

however, as to the date Hayes "permanently" ceased to have an obligation to contribute to the Fund for its Tennessee employees. Such disputes normally, however, are to be resolved by the arbitral process provided within the statutory scheme and are not issues for the courts prior to arbitration. *Robbins v. Pepsi-Cola Metropolitan Bottling Co.,* 800 F.2d 641 (7th Cir.1986). Unless an employer is mounting a facial constitutional attack or making a verifiable claim of irreparable injury, the courts have no jurisdiction to entertain the merits of the dispute prior to arbitration. *I.A.M. National Pension Fund v. Cooper Industries,* 789 F.2d 21 (D.C.Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986).

■ Hayes argues here that the withdrawal date of May 8, 1982, chosen by the fund is erroneous. If Hayes's contentions ended there, there would be nothing for the court to consider since determining the correct date of withdrawal when there is a dispute is for the arbitrator. Hayes also argues, however, that the erroneous date makes the whole proceeding a nullity.

It is conceded by all parties that the date of May 8, 1982, originally advanced by the Fund is erroneous. That is because 29 U.S.C. § 1385(a)(2) provides that December 31 of the year in which an employer's obligation to contribute permanently ceases becomes its withdrawal date. The district court placed considerable significance on this error in reaching its conclusion. However, the significance to the district court did not stem solely from the technical error of not using the mandated December 31 date but rather from its conclusion that the May date was the start of a labor dispute which continued for a considerable period of time. 29 U.S.C. § 1398 provides that:

> There is a partial cessation of the employer's contribution obligation for the plan year if, during such year—
> (i) the employer permanently ceases to have an obligation to contribute under one or more but fewer than all collective bargaining agreements under which the employer has been obligated to contribute under the plan but continues to perform work in the jurisdic-

Notwithstanding any other provision of this part, an employer shall not be considered to have withdrawn from a plan solely because—

(1) an employer ceases to exist by reason of—

(A) a change in corporate structure described in section 1362(d) of this title, or

(B) a change to an unincorporated form of business enterprise, if the change causes no interruption in employer contributions or obligations to contribute under the plan, or

(2) an employer suspends contributions under the plan during a labor dispute involving its employees. For purposes of this part, a successor or parent corporation or other entity resulting from any such change shall be considered the original employer.

From this language the district court concluded that Hayes had not withdrawn from the plan on May 8, 1982—a date the court found "clearly erroneous."

### III.

Although the date was wrong and there was a labor dispute, this does not end the inquiry. The labor dispute here was never amicably resolved and resulted in decertification of the union. Thus, at least as of January, 1984, when decertification occurred, Hayes' obligation to make contributions to the Fund ceased and a partial withdrawal took place. Hayes argues that because the Fund knew there was a labor dispute and nonetheless picked May 8, 1982, as a withdrawal date, the entire request for withdrawal payments became a nullity and thus unenforceable, apparently

> tion of the type for which contributions were previously required or transfers such work to another location or
> (ii) an employer permanently ceases to have an obligation to contribute under the plan with respect to work performed at one or more but fewer than all of its facilities, but continues to perform work at the facility of

a kind of punishment theory.[6] Such a theory, however, misperceives the important purposes sought to be achieved by Congress in dealing with multiemployer pension plans. It is clear from a reading of the statutory sections dealing with withdrawal liability that the intent of Congress was to secure the funds as soon as possible and iron out the details and disputes later.

Accordingly, we REVERSE the decision of the district court denying interim payments. We note that while this case was pending on appeal, an arbitrator has ordered interim payments and is now considering the issue of the correct date of withdrawal. If interim payments, although ordered by the arbitrator, are not being made, the district court should enter an order awarding interim payments, interest, and such other costs and fees as are appropriately awardable.

the type for which the obligation to contribute ceased.

6. *See, e.g., I.A.M. National Pension Fund v. Schulze Tool & Die Co.,* 564 F.Supp. 1285 (N.D. Cal.1983). *T.I.M.E.–DC, Inc. v. New York State Teamsters Conference Pension & Retirement Fund,* 580 F.Supp. 621 (N.D.N.Y.), *aff'd,* 735 F.2d 60 (2d Cir.1984), relied on by the district court is distinguishable in that in *T.I.M.E.–DC* there were definite prospects for resumption of contributions which was not the case here.